USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sep 26 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TERRY BOOKER,

        Plaintiff,

-against-

CITY OF NEW YORK, et al.,

        Defendants.

17-CV-7035 (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge**.

    Plaintiff Terry Booker, proceeding *pro se*, brings this action against the City of New York (City), Dr. Allan Goldberg, and Nina Edwards (collectively the Individual Defendants), alleging that defendants denied him adequate medical care while he was detained at Rikers Island by not providing him supportive footwear. Plaintiff brings claims under 28 U.S.C. §§ 1981 and 1983 (alleging violations of his First, Fourth, Eighth, and Fourteenth Amendment rights), the Americans with Disabilities Act (ADA), and the Rehabilitation Act. Now before the Court is defendants' motion (Dkt. No. 44) to dismiss plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, defendants' motion will granted and plaintiff's constitutional claims will be dismissed with prejudice. His claims under the ADA and Rehabilitation Act will be dismissed without prejudice.

**I.    BACKGROUND**

    Plaintiff alleges that he suffers from severe neuropathy and degenerative joint disease in his feet, requiring supportive footwear. *See* Compl. (Dkt. No. 2) ¶¶ 8-9. On November 21, 2016, while he was in the custody of the New York City Department of Corrections (DOC) at the Robert Davoren Center (RDC) on Rikers Island, plaintiff visited podiatrist Dr. Allan Goldberg, who diagnosed plaintiff with a number of skin conditions and, as relevant here, executed a "Referral"

form stating that "for medical reasons" plaintiff should be allowed "to obtain and wear supportive footwear as per institutional and clinical guidelines." *Id.* ¶ 10 & ECF page 13.[1]

On January 25, 2017, not having received any supportive footwear, plaintiff submitted an Inmate Grievance and Request Program (IGRP) "Statement Form" which repeated Dr. Goldberg's recommendation (but left the "action requested by inmate" section of the form blank). Compl. at ECF page 23. On January 31, 2017, the IGRP staff determined that plaintiff's request was "not subject to the IGRP process" because it concerned the quality of plaintiff's medical care, and advised him by means of an IGRP "Disposition Form" that he should make his request to the Clinical Administrator. *Id.* at ECF page 25.

On January 9, February 13, March 7 and March 24, 2017, RDC medical staff executed "Special Needs Forms" stating that plaintiff "will need" supportive footwear. Compl. at ECF pages 14-17. On March 30, 2017, Dr. Goldberg again completed a Referral form stating that plaintiff should be permitted to "obtain and wear supportive footwear for 30 days." *Id.* at ECF page 18. On April 27 and May 12, 2017, RDC medical staff executed additional Special Needs Forms authorizing supportive footwear for plaintiff. *Id.* at ECF pages 19, 21.

Meanwhile, on March 20, 2017, defendant Edwards, who was the Disability Rights Coordinator (DRC) for Inmates at Rikers Island, signed an "Accommodation Determination Acknowledgment for Inmates" form stating that the DRC had received plaintiff's request for an accommodation, and that it was "being reviewed." Compl. at ECF page 26. On April 21, 2017, Edwards completed a "Reasonable Accommodation Determination Request for Inmates" form,

---

[1] Plaintiff's *pro se* complaint is hand-written (in part using this Court's form complaint for § 1983 actions) and includes various supporting documents that are attached but not separately labelled as exhibits. For clarity, the Court will refer to plaintiff's hand-written factual allegations by paragraph numbers and will identify supporting documents by their ECF page numbers.

which "approved" plaintiff's request, and advised that, "as requested, you are getting medical attention to receive supportive footwear." *Id.* at ECF page 27.

Plaintiff alleges that, even though Edwards granted his request, he was "denied treatment because he was filing grievances and complaints." Compl. ¶ 12. He further alleges that he "continues to suffer with extreme pain and without proper supportive footwear" because defendants acted with a "culpable, wanting [sic] state of mind, in violation of plaintiffs civil rights, cruel and unusual punishment." *Id.* ¶ 13. Other than as summarized above, plaintiff does not identify the person(s) responsible for the denial. He seeks $1 million in compensatory damages and another $1 million in punitive damages. *Id.* ¶ 15.

Plaintiff filed this action on September 14, 2017. Defendants moved to dismiss his claims on January 16, 2018. Plaintiff responded with series of letters (Dkt. Nos. 47, 49, 51-55, 59, 60-66) generally requesting that his case be permitted to move forward. The parties have consented to my jurisdiction for all purposes. (Dkt. No. 36.)

## II. LEGAL STANDARDS

### A. Motion to Dismiss

When faced with a Rule 12(b)(6) motion, the trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, those factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court may not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Geldzahler v. New York Med. Coll.*, 663 F. Supp.

2d 379, 385 (S.D.N.Y. 2009). At a minimum, the complaint must "give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)).

A plaintiff's complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," or the deficient claims may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

A *pro se* plaintiff is "'entitled to special solicitude,'" and the court must "read his pleadings 'to raise the strongest arguments that they suggest.'" *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (per curiam)). "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman*, 470 F.3d at 475 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Therefore, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).

Consistent with that approach, factual allegations made in a *pro se* plaintiff's opposition papers may be considered "as supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint." *George v. Pathways to Hous., Inc.*, 2012 WL 2512964, at *6 n.7 (S.D.N.Y. June 29, 2012); *Scott v. Warden & Adm'r of Jurisdiction Correction Dep't & Med. Dep't*, 2010 WL 3785252, at *4 (S.D.N.Y. Aug. 23, 2010). Nevertheless, a *pro se* plaintiff, like any other plaintiff, "must state a plausible claim for relief," *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013), and the district court cannot "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

### B. Section 1981

42 U.S.C. § 1981 ensures that the rights "enjoyed by white citizens" are enjoyed by all citizens. To establish a claim under § 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) defendants' intention to discriminate on the basis of race; and (3) the discrimination concerned one of the activities enumerated in the statute, such as the right to enforce a contract, sue and be sued, give evidence, etc." *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 475 (S.D.N.Y. 2013) (citing *Brown v. City of Oneonta, New York*, 221 F.3d 329, 339 (2d Cir.2000)). A plaintiff must "sufficiently allege that defendants acted with discriminatory intent." *Burgis v. N.Y.C Dep't. of Sanitation*, 798 F.3d 63 (2d Cir. 2015) (quoting *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982)).

### C. Section 1983

42 U.S.C. § 1983 does not create any new rights, but provides a mechanism for a plaintiff to sue those who, acting "under color" of state law, deprived the plaintiff of "any rights, privileges, or immunities secured by the Constitution" or federal law. To state a claim under § 1983, "a plaintiff must allege that (1) the defendant was a state actor, *i.e.*, acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of 'rights, privileges,

5

or immunities secured by the Constitution or law of the United States.'" *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743-44 (2d Cir. 2003)). Here, plaintiff asserts claims under the First, Fourth, Eighth, and Fourteenth Amendments. Compl. ¶¶ 2, 14.[2]

### 1. First Amendment - Retaliation

To prevail on a First Amendment retaliation claim, "a prisoner must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)); *see also Gomez v. Cty. of Westchester*, 649 F. App'x 93, 96 (2d Cir. 2016) (applying *Espinal* test to pretrial detainees) "[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." *Dolan*, 794 F.3d at 294 (quoting *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996)) "The Second Circuit requires that such claims be 'supported by specific and detailed factual allegations,' not stated 'in wholly

---

[2] Plaintiff's complaint does not state whether he was a pretrial detainee at the time of the events alleged in his Complaint or was serving a sentence following conviction. The distinction is potentially significant to his claim for deliberate indifference to his medical needs. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) (holding that for pretrial detainees, who may sue for deliberate indifference under the Due Process Clause of the Fourteenth Amendment, the defendant officer's culpable state of mind is viewed "objectively," while for convicted inmates, who must sue under the Eighth Amendment, the necessary *mens rea* is "defined subjectively, meaning that a prison official must appreciate the risk to which a prisoner was subjected"). For purposes of the pending motion the Court assumes that plaintiff was a pretrial detainee and accordingly analyzes his deliberate indifference claim under the slightly more generous Fourteenth Amendment standard.

conclusory terms.'" *Corley v. City of New York*, 2017 WL 4357662, at *19 (S.D.N.Y. Sept. 28, 2017) (quoting *Dolan*, 794 F.3d at 295).

A defendant's action is "adverse if it 'would deter a similarly-situated individual of ordinary firmness from exercising his constitutional rights.'" *Jones v. Harris*, 665 F. Supp. 2d 384, 397 (S.D.N.Y. 2009). Further, a plaintiff's allegations "must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'" *Varela v. Demmon*, 491 F. Supp. 2d 442, 452 (S.D.N.Y. 2007) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir. 2001)).

### 2. Fourth Amendment – Unreasonable Search

Incarcerated persons have very limited Fourth Amendment rights. Where the search "is conducted by a prison official, 'established decisional law holds that the search would not be subject to constitutional challenge, regardless of whether the security needs could justify it.'" *Roundtree v. City of New York*, 2018 WL 1586473, at *11 (S.D.N.Y. Mar. 28, 2018) (quoting *United States v. Cohen*, 796 F.2d 20, 24 (2d Cir. 1988)).

### 3. Fourteenth Amendment - Deliberate Indifference to Serious Medical Needs

Claims by pretrial detainees for inadequate medical care are analyzed under the Fourteenth Amendment using a "two-pronged standard." *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717 (S.D.N.Y. 2017). "The first requirement is objective: 'the alleged deprivation of adequate medical care must be 'sufficiently serious.' " *Id.* (quoting *Spavone v. New York State Dep't of Correctional Servs.*, 719 F.3d 127, 139 (2d Cir. 2013)). The second prong requires the plaintiff to show that the defendant acted with a "sufficiently culpable state of mind." *Davis v. McCready*, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

To satisfy the second prong, the plaintiff must prove that the defendants were deliberately indifferent. *Charles v. Cty. of Orange*, 2017 WL 4402576, at *10 (S.D.N.Y. Sept. 29, 2017). This

7

standard requires more than "mere negligence." *Darnell*, 849 F.3d at 29. The plaintiff must "prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

### 4. Municipal Liability

Plaintiff has named the City (which operates Rikers Island) as a defendant. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality can be held liable under § 1983 only if the deprivation of the plaintiff's rights is caused by a custom, policy, or usage of that municipality. *Id.* at 690-91. Absent such a custom, policy, or usage, a city "cannot be held liable on a respondeat superior basis for the tort of its employee." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). Thus, to "hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal citation omitted); *see also Leneau v. Ponte*, 2018 WL 566456, at *16 (S.D.N.Y. Jan. 25, 2018) (plaintiff "must 'demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury'") (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008)).

### D. ADA and Rehabilitation Act Claims

Plaintiff invokes the ADA and the Rehabilitation Act (Compl. ¶ 2) without further specifying the nature of his claims under those statutes. Reading his Complaint to raise the strongest arguments it suggests, the Court construes it to allege that he was denied a reasonable

8

accommodation to mitigate his disability as required by Title II of the ADA, 42 U.S.C. § 12132,[3] and § 504 of the RA, 29 U.S.C. § 794(a).

> Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794(a).

*Wright v. New York State Dep't. of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

To prevail on a reasonable-accommodation claim under either statute, the plaintiff must allege that "(1) he is a qualified individual with a disability; (2) the defendant entity is subject to the acts; and (3) he was denied opportunity to participate in or benefit from in the entity's services, programs, or activities or otherwise discriminated against by reason of his disability." *Wright* (quoting *Henrietta v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). Under either statute, a plaintiff may claim discrimination on one of three theories: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Tsombanidis v. West Haven Fire Dep't,* 352 F.3d 565, 573 (2d Cir.2003)).

---

[3] Title III of the ADA, which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation," 42 U.S.C. § 12182(a), can only be asserted against a "private entity engaged in the provision of public accommodations" and cannot be asserted against the City or its employees in their official capacities. *Morales v. New York*, 22 F. Supp. 3d 256, 266 (S.D.N.Y. 2014). Additionally, a "private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004), *opinion corrected,* 511 F.3d 238 (2d Cir. 2004). Because plaintiff's Complaint seeks only damages, the Court will consider his ADA claim only under Title II.

Damages – the only relief plaintiff seeks – are available under Title II of the ADA and § 504 of the Rehabilitation Act only if the plaintiff can show intentional conduct. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) ("monetary damages are recoverable only upon a showing of an *intentional* violation"); *Viera v. City of New York*, 2017 WL 3130332, at *14 (S.D.N.Y. July 21, 2017).[4] To make such a showing, plaintiff must allege facts demonstrating that defendants acted with "deliberate indifference to the strong likelihood of a violation." *Loeffler*, 582 F.3d at 275.

## III.    DISCUSSION

### A.    Plaintiff Has Failed to Plead a Section 1981 Claim

Although plaintiff cites §1981 (Compl. ¶ 2), at no point does he allege either that he was discriminated against on the basis of race, or that any defendant acted with racially discriminatory intent. Where a "plaintiff has failed to allege sufficiently that there was any intent to discriminate – or any actual discrimination – on the basis of race," his claims are properly dismissed under Fed. R. Civ. P. 12(b)(6). *Staten v. Patrolmen's Benevolent Ass'n of City of New York, Inc.*, 282 F. Supp. 3d 734, 740 (S.D.N.Y. 2017), *aff'd,* 736 F. App'x 17 (2d Cir. 2018).

### B.    Plaintiff Has Failed to Plead a Section 1983 Claim

Plaintiff has failed to state any constitutional claim under § 1983. The deficiencies of each of his § 1983 claims are addressed in turn.

#### 1.    First Amendment - Retaliation

As noted above, use of a prison grievance procedure is protected speech. *Dolan*, 794 F.3d at 294. However, plaintiff does not allege that any named defendant took any adverse action as a result of the grievance, nor that there was a causal connection between the grievance and the

---

[4] Title II of the ADA explicitly incorporates the remedies provision of the Rehabilitation Act. *See* 42 U.S.C. § 12133.

10

adverse action, as required to state a claim for retaliation. *Id.* Plaintiff alleges only that he submitted a grievance on January 25, 2017 (which in substance complained that he had not yet received the supportive footwear for which he was approved two months earlier) and that he was thereafter denied the footwear by a person or persons unknown. Compl. at ECF page 23. Plaintiff does not allege any facts suggesting that either of the two individual defendants retaliated against him. To the contrary: on March 30, 2017 (after plaintiff filed his grievance), Dr. Goldberg again completed a Referral form stating that plaintiff should be permitted to "obtain and wear supportive footwear for 30 days." Compl. at ECF page 18. And on April 21, 2017, Edwards "approved" plaintiff's request for accommodations and advised that, "as requested, you are getting medical attention to receive supportive footwear." *Id.* at ECF page 27. Nor does plaintiff allege facts showing that he suffered an adverse action as a result of the grievance. To the contrary: the only direct result of the grievance seems to be that he was directed to Edwards, *id.* at ECF page 25, who considered, and then approved, his request for an accommodation. *Id.* at ECF pages 26-27. To the extent plaintiff alleges that the continued delay in providing him the footwear was caused or exacerbated by the grievance, he has failed to show any such causal connection. Plaintiff's First Amendment Claim is therefore properly dismissed pursuant to Rule 12(b)(6).

### 2. Fourth Amendment Claims

Although plaintiff cites the Fourth Amendment (Compl. ¶¶ 2, 14), at no point does he allege that any search or seizure took place, much less that it was conducted by any non-prison officials, thus precluding him from pursuing a claim under the Fourth Amendment. *Roundtree*, 2018 WL 1586473 at *11.

### 3. Fourteenth Amendment Claims

Plaintiff fails to state a cognizable claim for relief under the Due Process clause of the Fourteenth Amendment. To meet the first prong of the deliberate-indifference test, "the plaintiff's

medical condition must be one 'of urgency, one that may produce death, degeneration, or extreme pain.'" *Konstantopoulos v. City of New York*, 2017 WL 4736741, at *1 (S.D.N.Y. Oct. 19, 2017) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). *See also Black v. Petitinato*, 2016 WL 3983590, at *4 (E.D.N.Y. July 25, 2016) (plaintiff must show "an extreme level of discomfort or risk of exacerbated injury before the condition is viewed as serious enough to support a constitutional claim"). "'[C]ourts in this Circuit have consistently found that pain and other problems resulting from being forced to wear institutional footwear are not sufficiently serious' to meet the foregoing standards." *Konstantopoulos*, 2017 WL 4736741, at *2 (quoting *Stevens v. City of N.Y.*, 2013 WL 81327, at *3 (S.D.N.Y. Jan. 8, 2013)). Plaintiff therefore cannot state a claim for deliberate indifference to his medical needs.

### 4. Plaintiff Has Failed to State a *Monell* Claim

Plaintiff names the City of New York as a defendant, but does not include any allegations about the City or any factual allegations that would suggest that the delay in providing him with supportive footware was the result of a municipal policy. Where plaintiff makes "no mention of [the municipal] Defendant in its allegations," he fails to state a *Monell* claim against the municipality. *Knight v. Cty. of Orange*, 2017 WL 2889511, at *3 (S.D.N.Y. July 5, 2017).

Apparently concerned about this deficit, plaintiff asserted in one of his letters to the Court that both Individual Defendants "created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue." Pl. Ltr. dated January 29, 2018 (Dkt. No. 54), at 2-3. However, plaintiff did not assert any facts to support his conclusory allegation. "[T]he mere assertion as to the existence of a non-specific custom or policy will not suffice" to state a *Monell* claim in the absence of specific facts that would "support an inference" of an unconstitutional municipal custom, policy, or usage. *Askew v. Lindsey*, 2016 WL 4992641, at *4 (S.D.N.Y. Sept. 16, 2016). Even considering his opposition papers, therefore, plaintiff has failed

to plead a claim for relief under *Monell* and provides no reason for the Court to believe that he could successfully replead. Even if plaintiff had successfully pleaded one or more § 1983 claims against the Individual Defendants, therefore, his claims against the City would not survive.

### C. Plaintiff Has Failed to Plead an ADA or Rehabilitation Act Claim

The Court construes plaintiff's Complaint as raising claims of either intentional discrimination or an intentional failure to provide a reasonable accommodation under the ADA and the Rehabilitation Act. For purposes of the pending motion the Court assumes (without deciding) that plaintiff is a qualified individual with a disability, and defendants concede that they are subject to both statutes. *See* Def. Br. (Dkt. No. 45) at 13 n.8; *Wright*, 831 F.3d at 72. However, the Complaint fails to state a claim for intentional discrimination under either Act because plaintiff has failed to allege that he was denied opportunities or discriminated against by reason of his disability, *Wright*, 331 F.3d at 272, or that any defendant was deliberately indifferent to the strong likelihood of a violation. *Loeffler*, 582 F.3d at 275.

As to the Individual Defendants, the documents appended to the Complaint suggest that they repeatedly attempted to help plaintiff obtain supportive footwear: Dr. Goldberg completed two Referrals stating that plaintiff should be permitted supportive footwear, and Edwards approved his accommodations request for the footwear. *See* Compl. at ECF pages 13, 18, 27. Moreover, the Complaint does not allege that any other official even knew of his condition, much less took steps to thwart his request. Plaintiff has this failed to show that the City was deliberately indifferent to his condition or to its alleged violation.

Under a theory of an intentional failure to provide a reasonable accommodation, plaintiff must also show that defendants intentionally denied him meaningful access to services or programs to which he was legally entitled. *Stewart v. City of New York*, 2018 WL 1633819, at *4 (S.D.N.Y.

Mar. 31, 2018).[5] He has not done so here, because he had not alleged facts demonstrating that either the Individual Defendants or the City intentionally took any steps to deny him access to the footwear, or to any other programs and services for which the footwear was a necessary accommodation. As noted above, both Individual Defendants sought to assist plaintiff in obtaining the footwear he sought, and there is no allegation that any other City official countermanded their determinations or intentionally acted to deny him an accommodation. The allegation that plaintiff "continues to suffer . . . without supportive footwear," Compl. ¶¶ 12-13, is not sufficient. Plaintiff has thus failed to state a claim under the ADA or the Rehabilitation Act.

## IV. LEAVE TO REPLEAD

Because plaintiff is proceeding *pro se*, this action "should not be dismissed without granting leave to replead at least once," if a liberal reading of his Complaint "'gives any indication that a valid claim might be stated.'" *Barnes v. United States*, 204 F. App'x 918, 919 (2d Cir. 2006) (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999)). However, the Court need not grant leave to amend where it would be futile. *Caddick v. Pers. Co. I LLC*, 2018 WL 3222520, at *8 n.5 (S.D.N.Y. June 29, 2018).

Granting plaintiff leave to re-plead his §§ 1981 and 1983 claims would be futile. The Complaint, and the documents appended to it, show that the defects in these claims are "'substantive' and, thus, 'better pleading will not cure it.'" *Konstantopoulos*, 2017 WL 4736741, at *2 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Plaintiff does not suggest

---

[5] To the extent that plaintiff alleges an intentional failure to accommodate, it is not clear whether his claims could succeed on the theory that the supportive footwear itself was a "service or program" to which he was denied meaningful access (as opposed to the accommodation necessary for him to access other services or programs that should be available to both disabled and non-disabled individuals). The Second Circuit has not squarely addressed this question. *See Bilal v. New York City Dep't of Corr.*, 2010 WL 1875731, at *6 (S.D.N.Y. May 10, 2010) (noting split of authority in other circuits). Nor need this Court resolve it in order to decide the pending motion to dismiss.

any racial discrimination or speech-related retaliation. His Fourteenth Amendment claims for deliberate indifference to his medical needs fail as a matter of law, and at no point does he suggest any sort of policy or practice that could properly state a *Monell* claim. These claims will therefore be dismissed with prejudice.

However, the Court will provide plaintiff with an opportunity to amend his Complaint as to his claims under ADA and Rehabilitation Act that the City intentionally failed to provide a reasonable accommodation for his disability. At present, his Complaint alleges only that he suffered from various medical conditions causing him to experience foot pain; that two City officials agreed that plaintiff needed supportive footwear and repeatedly approved his requests for such footwear; but that he never received the accommodation he sought. It is possible that plaintiff can allege additional facts that would show: (a) that he was at all relevant times a "qualified person with a disability," that is, that his impairments "substantially limit[ed] one or more of life's major activities," *see* 42 U.S.C. § 12102(a)(a); (b) that he was excluded from participation in a public entity's services, programs or activities because of his disability, *see Fulton*, 591 F.3d at 43; and (c) that the City's conduct was "intentional," in the sense that one or more of its officials acted with "deliberate indifference to the strong likelihood of a violation." *Loeffler*, 582 F. 3d at 275.

The Court therefore grants plaintiff leave to file an Amended Complaint repleading his ADA and Rehabilitation Act claims (***not*** his §§ 1981 or 1983 claims) against the City (***not*** the Individual Defendants). The Amended Complaint must replace, not supplement, plaintiff's original Complaint; that it, it must stand on its own and allege all of the facts necessary to show that plaintiff has a cognizable claim against the City. Moreover, plaintiff may not rest on

15

conclusory statements that simply repeat the legal elements of his claim; he must allege *specific facts* which, if true, would entitle him to relief.

## V. CONCLUSION

For the reasons stated above, the defendants' motion to dismiss is GRANTED. Plaintiff's §§ 1981 and 1983 claims are DISMISSED WITH PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff's claims under the ADA and Rehabilitation Act are DISIMISSED WITHOUT PREJUDICE. Plaintiff may file an Amended Complaint no later than **November 2, 2018**, repleading his claims under the ADA and the Rehabilitation Act against the City.

The Court is informed that plaintiff is no longer incarcerated.

**Plaintiff is therefore advised that all letters and other communications with the Court must be submitted to the Pro Se Intake Unit, not directly to chambers.** The Pro Se Intake Unit is located in the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Room 200, New York, New York (telephone 212-805-0175). The staff of the Intake Unit may be of assistance to *pro se* litigants in connection with court procedures, but cannot provide legal advice.

**Plaintiff is further advised that he may choose to receive documents filed in this case by e-mail instead of by regular mail**. If plaintiff wishes to receive case information by e-mail, plaintiff must follow the instructions in the Consent and Registration Form, which is available on the website of the United States District Court for the Southern District of New York: http://www.nysd.uscourts.gov/prose, and submit that form to the Pro Se Intake Unit.

**Plaintiff is further advised that there is a legal clinic in this District to assist people who are parties in civil cases and do not have lawyers**. The Clinic is run by a private organization called the New York Legal Assistance Group; it is not part of, or run by, the Court (and, among other things, therefore cannot accept filings on behalf of the Court, which must still be made by any unrepresented party through the Pro Se Intake Unit). The Clinic is located in the

Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York, in Room LL22, which is just inside the Pearl Street entrance to that Courthouse. The Clinic is open on weekdays from 10 a.m. to 4 p.m., except on days when the Court is closed. An unrepresented party can make an appointment in person or by calling (212) 659-6190.

The Clerk of the Court is respectfully directed to close the motion at Dkt. No. 44 and to mail a copy of this Opinion and Order to the plaintiff.

Dated: New York, New York
September 26, 2018

**SO ORDERED**.

**BARBARA MOSES**
**United States Magistrate Judge**